Wilson, Chief Justice, delivered the opinion of the court: (1) Upon a trial of an action of ejectment, for the recovery of a lot of land in the town of Jacksonville, the plaintiff’s lessor, McConnel, produced, as evidence of title to the said lot, first, a certificate of entry from-the land office to Thomas Arnett, for 80 acres of land, dated the 25th of February, 1825; secondly, a deed of release from Arnett to McConnel, for the same 80 acres of land, [*120 ] dated the 21st of March, 1835, and recorded on the same day; also, a deed of bargain and sale, from Arnett to McConnel, for the same land, confirming and explaining the last mentioned deed of 1835, which was dated the first, and recorded the 3d day of July, 1837. The lot in question was admitted to be part of the land described in the certificate and deeds referred to. It was also admitted that the defendant was in possession of the premises, at the time of service of the declaration in the cause. The defendant then offered in evidence a deed from Arnett to Rixford, for the lot in question, dated May 12th, 1827, and recorded October 31st, 1836; and also several other deeds, constituting, as the plaintiff admitted, a connected chain of title to the said lot, from Rixford to the defendant. The defendant also proved that the premises were possessed by his grantors adversely to the plaintiff’s title, from 1829 until the present time; that a house was built upon the lot, in 1829, and had been occupied ever since by his grantors and himself; that additional improvements were made upon the lot, by the defendant, in 1832-3, and that the lessor of the plaintiff resided in-the vicinity of the premises in question, and in the same town in which the lot is situated, from a time previous to that at which both of his deeds were obtained from Arnett; and that during a part of the time, after the house was built upon the lot as stated, he had lived within view of the premises. To the introduction of this parol testimony, as well as the deed under which the defendant claimed title, the plaintiff objected, but the court overruled the objection ; and the cause being then submitted to the court, upon these facts, without the intervention of a jury, the court decided in favor of the validity of the defendant’s title, upon two grounds; the first of which was, that the quit claim deed from A7'nett to McConnel, conveyed onty such title as the grantor really had at the time of its execu. tion ; and that Arnett’s deed to the defendant’s grantor, of the lot in question, made before, though recorded after, that to McConnel, had divested him of all title to the same, so that none could pass by his subsequent conveyance to McConnel; and, secondly, that the facts in the case were sufficient to amount to constructive notice to McConnel, of the defendant’s title, and consequently his conveyance was inoperative as to that title. Several errors are assigned ; but the correctness of the adjudications upon these two points are all that require investigation. Both points must be adjudged to have been erroneously decided, to entitle the plaintiff to a reversal of the decision below; for if either of the positions assumed by the court be correct, it will constitute a bar to the plaintiff’s recovery. Both parties, it is seen, claim to derive title from the same source. The conveyance under which the defendant claims title is prior in point of execution, by several [* 121] years, while the deed of release, etc., by virtue óf which the plaintiff claims, was first recorded, though subsequently executed. The plaintiff’s deed of bargain and sale was posterior, both in execution and recording, to either of the others. The first question, therefore, that is to be decided is, as to the effect of the deed of release and quit claim, from Arnett to M’Con-nel. If that deed is construed to embrace the lot in question, from the fact that it was recorded before, although not executed until after, that under which the defendant claims, it must prevail over the latter one, by virtue of our recording laws; the obvious designs of which are to protect purchasers against latent equities. Prior to the passage of the .statutes made for the purpose of facilitating the manner of transferring lands, it was essential to the operation of a deed of release, that the grantee should have some estate or interést in the land released ; but many of the subtle distinctions and ceremonious forms, peculiar to the ancient modes of transferring titles, are abolished, and the policy of the law now requires that we should look rather to the intention of the parties, than to the form in which it is expressed. A deed of release and quit claim is as effectual for the purpose of transferring title to land, as a deed of bargain and sale; and the prior recording of such deed will give it a preference over one previously executed, but which was subsequently recorded. In this respect there is no distinction between different forms of conveyance. As a general rule, the one first recorded must prevail over one of older execution, when made in good faith, and when it appears to have been the intention of the parties to convey again the same lands which had been previously conveyed. Rut where the tefms of the second deed do not necessarily embrace the land previously conveyed, and, on the contrary, are such as to show that it was not the intention of the grantor to include them, the court will give it such construction as not to embrace them, and will not allow it to operate to the prejudice of the first purchaser. This principle was settled by the supreme court of the United States, in the case of Brown v. Jackson, 3 Wheat. 448; and according to the spirit of the rule adopted in that case, the land in question cannot be considered to have passed to the plaintiff, by the deed under which he claims. The case of Brown v. Jackson is essentially like the present one. The plaintiff claimed title to a tract of land in the state of Kentucky, under a deed from one Lee, which specifically described the land in controversy. To prove title out of the plaintiff, the defendant also produced a deed from Lee to Banks, granting all the right, title, and interest which he, the said Lee, holds, etc., of all land within the state of Kentucky, etc. This deed was executed after, but recorded before, the deed from [*122] Lee to the plaintiff, and there, as here, priority of record conferred superiority of title, and rendered this conveyance conclusive against the plaintiff’s claim, if its terms were construed to embrace the land previously conveyed to him. But the court was of opinion that the terms, “all the right, title, and interest which the said Lee holds,” etc., limited the operation of the last conveyance to the lands, the right, title, and interest of which were in Lee, at the date thereof; and consequently could not defeat the operation of the first deed upon land specifically transferred prior to that time. The deed of release from Arnett to McConnel is in the usual form. By it the grantor remises, releases, and forever quit claims all right, title, and interest to all and every part of a legal subdivision of a tract of land forming part of the town of Jacksonville, and unexplained, would transfer all and every part of the •tract of land designated, the title to which the grantor had not previously divested himself, by a valid transfer "duly recorded. But the plaintiff himself has furnished such evidence of the intention of the grantor,, as forbids such an interpretation of the conveyance ; and upon the principle of the case of Brown v. Jackson, restricts its operation to the lands which the grantor was the real and bona fide owner of, at the time of its execution. This evidence is the deed of bargain and sale from Arnett to McCon-nel. This deed being posterior, both in execution and registry, to either that relied upon by the plaintiff or defendant, it could have been introduced only for the purpose for which it was made. It professes to be made for the purpose of removing all doubt and uncertainty as to the meaning and intention of the grantor, in making the deed of release to McConnel. It must therefore be conclusive against the plaintiff, as to the meaning of that deed— the limit and extent of its operation. By this deed the grantor declares it to have been his intention and design, in making the deed of release, to transfer and convey absolutely all right, title, and interest, etc., that he then had in and to said land. This explanation seems clear, and susceptible of but one meaning. He intended to convey all the land which, at the time.of the conveyance, he then had right and title to. That which he had before fairly sold and conveyed, for a valuable consideration, he certainly had no right to, and upon such parts of the land the deed of release was not intended to operate. Much of the land, it may be fairly inferred, had been sold, from the fact that it had been laid out into town lots, and buildings erected thereupon; the balance, then, that remained unsold, was intended to be conveyed to the lessor of the plaintiff. This construction is in accordance with the explanatory deed, and in conformity to the rule adopted in the case of Brown v. Jackson, and which, as the court there says, is a reasonable one, founded upon the apparent in- [*123] tention of the parties. Upon any other construction, the deed of release would be a fraud upon the prior purchaser; but in this way both deeds may well stand together, consistently with the innocence of all parties. No objection can be raised by the plaintiff, to the adoption of the explanation of the deed of release afforded by the deed of bargain and' sale. It is a rule of interpretation furnished by himself, and he must abide the consequence of its application and effect. The next question to be considered is that of notice; for, although the statute gives effect to the deed first recorded, in preference to a preceding unrecorded one, it does so only when the grantee of the first recorded deed has acted fairly and in good faith. If, therefore, at the time of making his contract, he had notice of the prior unrecorded deed, he is regarded as acting in bad faith, and neither the principles of justice, nor the policy of the law will allow him to avail himself of his priority of record to supersede the claims of a bona fide purchaser, and permit him to triumph in his fraud. The policy of the law requires every conveyance of real estate to be recorded in the county in which it may lie; and. if not so recorded, declares it to be void as against any subsequent purchaser, etc., of the same estate, for á Valuable consideration, whose conveyance shall be first duly recorded. The recording of a deed is a general notification of its contents; and every subsequent transfer of the same lands is deemed fraudulent. In pursuance of this principle, it has been settled that notice of a preceding conveyance, in any other way, will be equally effectual, and will countervail the want of recording. Bare suspicion, however, of title in another will not be sufficient to raise an inference of fraudulent intent. There must be either actual or constructive notice of title. If is not pretended that the defendant’s title was recorded, or that the plaintiff had actual notice of it. The inquiry therefore arises whether the circumstances in this case are such as to amount to constructive notice to McConnel, of title in the defendant. It is laid down, as a general rule, that when a purchaser has sufficient information to lead him to the knowledge of a fact, he shall be deemed cognizant of that fact. The question of notice, under this rule, is often one of difficult decision; but in this case that fact does not depend upon circumstances of a doubtful or equivocal character. The decisions are uniform, that possession of land is notice to a purchaser of the possessor’s title. The possession being adverse to the claim of his vendor’s title, he is presumed to purchase subject to the title upon which it is founded. But without saying that possession out of the vendor is alwaj'-s notice to a vendee of the possessor’s title, we may say that the possession shown by the defendant in this case, together with the accompanying circumstances, constitute [*124] notice to McConnel, of his title. In some cases possession is the foundation as well as the evidence of title, and, under all circumstances, it is such indicia of ownership as should induce a prudent purchaser to examine into its foundation. In this case the defendant, and those under whom he claims, had not only been in the adverse possession of the premises about eight years, but they had at different times improved the property, by the erection of valuable buildings. These are circumstances too strongly indicative of an interest in the land to be mistaken; and that they came within the knowledge, as they transpired within view of the lessor of the plaintiff, cannot be doubted. Prior to the first purchase of the land, and ever since, the lessor of the plaintiff had lived in the same town in which the premises are situated, and part of the time within view of them. He must therefore have had a knowledge of the possession of the defendant’s grantors, their improvements at different times, together with the continued exercise of ownership up to the time of his purchase. The adverse possession, improvement, and exercise of ownership for a number of years, by the defendant and bis grantors, all of 'which being manifestly known to the plaintiff’s lessor, amount to notice of title in the defendant, as certain and sufficient, as could be given by the recording of the evidences of his title. There is no error, therefore, in the decision of the court below, either in the construction of the deed under which the plaintiff claims title, or in deciding the facts proved to be constructive notice to him of the defendant’s title. The judgment is therefore affirmed. Judgment affirmed. Scates, Justice, did not sit in this cause, and Douglass, Justice, having been of counsel, gave no opinion. It was decided at the December term, 1841, but the opinion was not delivered till this term.